**GILLUM, Admr., Appellant,**

**v.**

**FAIRGREENS COUNTRY CLUB, Appellee.**

[Cite as *Gillum v. Fairgreens Country Club* (1996), 110 Ohio App.3d 60.]

Court of Appeals of Ohio,
Fourth District, Jackson County.

No. 95 CA 764.

Decided March 27, 1996.

*Lamkin, Van Eman, Trimble, Beals & Rourke, William W. Lamkin* and *Kenneth J. Blumenthal,* for appellant.

*Richard M. Lewis,* for appellee.

PETER B. ABELE, Presiding Judge.

This is an appeal from a judgment entered by the Jackson County Common Pleas Court granting summary judgment in favor of the Fairgreens Country Club, defendant below and appellee herein. Catherine E. Gillum, plaintiff below and appellant herein, had brought a wrongful death action against appellee for loss of consortium, asserting that appellee negligently served alcohol to her late husband, Michael P. Gillum, while he was visibly intoxicated and that such negligence proximately caused his fatal automobile accident.

Appellant assigns the following errors:

First Assignment of Error

"The lower court committed reversible error in finding as a matter of law that defendant-appellee owed no duty of care to plaintiff-appellant's decedent."

Second Assignment of Error

"The trial court committed reversible error in determining that plaintiff-appellant's decedent assumed the risk of the consequences of his act which contributed to and was the proximate cause of his death."

Third Assignment of Error

"The lower court committed reversible error by granting summary judgment to preclude the wrongful death claims of Michael Gillum's survivors."

The relevant and material facts in the instant case are not in dispute. On March 29, 1990, Michael Gillum went to the Fairgreens Country Club at approximately 12:30 p.m. to play golf. He consumed some alcohol during the round, which ended sometime between 4:30 and 5:00 p.m. Gillum then returned to the clubhouse and continued to consume alcohol. Gillum left the club sometime between 10:30 and 11:00 p.m. Gillum subsequently had an automobile accident and died instantly.

On March 19, 1992, appellant filed an action for wrongful death against appellee, alleging that appellee had sold Gillum alcohol knowing that he was intoxicated and that his accident and subsequent demise were proximate results of that sale. Appellant also alleged that appellee's conduct was not merely negligent, but "also demonstrated malice, aggravated and egregious fraud, oppression and insult." Appellant sought damages to compensate the beneficiaries of Gillum's estate for the loss of his society and also sought punitive damages based on appellant's claim that appellee's conduct involved more than simple negligence.

On September 24, 1992, appellee filed a motion for summary judgment. After hearing argument on the motion, the trial court denied the motion. Appellee subsequently filed a motion to reconsider and another motion for summary judgment on April 19, 1993. In a June 27, 1995 entry, the trial court granted both motions, stating that the appellee owed no duty to the decedent and that the decedent assumed the risk of the accident when he operated the motor vehicle while intoxicated. The appellant filed a timely notice of appeal.

Because appellant's three assignments of error concern, in essence, the same issue, we will address them together. Appellant asserts that the court erred by granting summary judgment in favor of appellee. Specifically, appellant asserts that genuine issues of material fact exist concerning whether appellee in fact owed Gillum a duty and whether Gillum assumed the risk when he chose to drive while intoxicated.

■ Initially, we note that summary judgment is appropriate when the movant demonstrates (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123, 1126; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The moving party bears the burden of proving no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

■ When reviewing a summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. An appellate court need not defer to the trial court's decision in summary judgment cases. See *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.

In the case *sub judice,* appellant, as the personal representative of Gillum's surviving family and other next of kin of the decedent, seeks damages for loss of consortium. Appellant's claim is based on appellee's alleged violation of R.C. 4301.22(B). R.C. 4301.22 provides as follows:

"Sales of beer and intoxicating liquor under all classes of permits and from state liquor stores are subject to the following restrictions, in addition to those imposed by the rules or orders of the department of liquor control:

" * * * *

"(B) No permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person."

Appellant alleges that when drafting R.C. 4301.22(B), the Ohio General Assembly established a standard of care. Appellant further alleges that appellee breached that standard of care by selling alcohol to Gillum because appellee made the sale while Gillum was visibly intoxicated. Appellant also cites R.C. 4399.18, a section of Ohio's Dram Shop Act, alleging that when passing the statute, the General Assembly intended to hold liable those vendors who sell intoxicating beverages to a patron known to be intoxicated when that patron, due to his intoxication, causes injury.

Appellant concedes that R.C. 4399.18 itself does not apply to this case because the provision's language limits recovery to innocent third parties who are injured by the dram shop's negligent sale of alcohol.[1] Appellant cites *Mason v. Roberts* (1973), 33 Ohio St.2d 29, 62 O.O.2d 346, 294 N.E.2d 884, however, as authority for the existence of two common-law causes of action separate from the statutory claim available in R.C. 4399.01.[2] Appellant argues that though R.C. 4399.18 expressly benefits only third parties injured by an intoxicated patron, a plaintiff other than an third party may assert a common-law cause of action for selling alcohol contrary to statute, citing the policy supporting R.C. 4399.18. Appellant concludes that she has a common-law negligence action against appellee that is based upon appellee's alleged violation of R.C. 4301.22(B) and that will allow her to recover damages for loss of consortium even though the loss was at least

---

1. R.C. 4399.18 provides as follows:

" * * * A person has a cause of action against a permit holder or his employee for personal injury, death or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:

"(A) The permit holder or his employee knowingly sold an intoxicating beverage to at least one of the following:

"(1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;

" * * *

"(B) The person's intoxication proximately caused the personal injury, death or property damage."

2. In *Roberts*, the Supreme Court of Ohio held that the Dram Shop Act does not provide the exclusive remedy against a liquor permit holder for harm caused to third persons by the recipient of intoxicating beverages. *Id.*, 33 Ohio St.2d 29, 62 O.O.2d 346, 294 N.E.2d 884, syllabus. The court explained that while it agreed that an action under R.C. 4399.01, the "blacklist" provision of the Act, will not lie unless the patron/tortfeasor was actually on the blacklist of those not to be served, an innocent third party whose facts fall outside R.C. 4399.01 has a common-law cause of action against the liquor provider when either (1) the seller knows that the purchaser's will to refrain from drinking is so impaired, due to mental weakness, that it is not possible for him to decline the offer; or (2) when the sale is contrary to statute. The court cited a violation of R.C. 4301.22(B) as an example of such a sale.

partially caused by the intoxicated decedent himself.[3]

We note, however, that in *Smith v. The 10th Inning* (1990), 49 Ohio St.3d 289, 551 N.E.2d 1296, the Supreme Court of Ohio determined that a voluntarily intoxicated person is not among the class of persons the General Assembly intended to protect by enacting R.C. 4301.22(B). In *The 10th Inning*, the plaintiff and his wife brought suit against a drinking establishment seeking damages for personal injuries. The plaintiff sustained the injuries in an automobile accident that occurred after the plaintiff had become intoxicated at the establishment. The plaintiff in *The 10th Inning*, like appellant herein, alleged that the establishment had violated R.C. 4301.22(B) by selling alcohol to him while he was intoxicated, and that the violation provided a basis for recovery. The court, in addressing whether an intoxicated patron has a cause of action under R.C. 4301.22(B) against the permit holder who sold the alcoholic beverages, wrote the following:

"Since we believe that public policy considerations strongly militate against the allowance of such an action, we answer this question in the negative * * *.

" * * *

" * * * [W]e find that one of the strongest reasons compelling rejection of such a cause of action by the intoxicated patron against the permit holder is one grounded in commonsense public policy; namely, that an adult who is permitted to drink alcohol must be the one who is primarily responsible for his or her own behavior and resulting voluntary actions. Clearly, permitting the intoxicated patron a cause of action in this context would simply send the wrong message to all our citizens, because such a message would essentially state that a patron who has purchased alcoholic beverages from a permit holder may drink such alcohol with unbridled, unfettered impunity and with full knowledge that the permit holder will be ultimately responsible for any harm caused by the patron's intoxication. In our opinion, such a message should never be countenanced by this court.

---

**3.** We note that in the proceedings below, the parties disagreed over appellee's status as a provider of alcohol. Appellant argued that appellee should be considered a commercial provider of alcohol, while appellee contended that it should be considered a social host, thereby falling under *Settlemyer v. Wilmington Veterans Post No. 49* (1984), 11 Ohio St.3d 123, 11 OBR 421, 464 N.E.2d 521 (holding that when no statutory duty violation is alleged, a social host lacking actual knowledge of the patron's intoxication is not liable for injuries to third parties caused by the intoxicated patron's acts). However, we also note that appellee's brief states "in order to give the Appellant the benefit of having the evidence construed most strongly in her favor, Fairgreens has argued its position in the lower court as if it would be held to the standards applicable to a commercial provider of alcohol." We agree with appellee that when considering a summary judgment, this court must construe the evidence in favor of the nonmoving party.

" * * * By denying the intoxicated patron the right of recourse from the only other person arguably responsible for the patron's intoxication (*i.e.*, the permit holder), this court reiterates the basic commonsense notion that responsibility for one's voluntary liquor consumption should be one's own, since it reflects basic public policy considerations. As between the patron and the permit holder, we believe that the patron is in the best position to prevent intoxication before it occurs and, therefore, *we find that the patron should, in this context, be denied a cause of action to recompense his or her own drunken behavior. In sum, we find that the intoxicated patron is not the type of 'innocent party' who was intended to be protected under R.C. 4301.22(B).* Cf. *Gressman* [*v. McClain* (1988), 40 Ohio St.3d 359, 533 N.E.2d 732], *supra.*

"Therefore, *we hold that as a matter of public policy, an intoxicated patron has no cause of action against a liquor permit holder under R.C. 4301.22(B) where the injury, death or property damage sustained by the intoxicated patron off the premises of the permit holder was proximately caused by the patron's own intoxication.*" (Emphasis added.) *Id.,* 49 Ohio St.3d at 290–292, 551 N.E.2d at 1297–1299.

As appellant points out, the case *sub judice* is different from *The 10th Inning* in several ways. First, we acknowledge that the establishment in *The 10th Inning* held a liquor permit, while appellee apparently sold alcohol without a permit. We also acknowledge appellant's argument, based on the language of the holding in *The 10th Inning,* that a cause of action should still lie if more than one proximate cause, *i.e.,* one apart from the intoxicated patron's own negligence, contributed to the accident. Appellant's argument on this point is that the issue of distribution of fault should be submitted to the jury in accordance with Ohio's comparative negligence scheme. Finally, we note that in *The 10th Inning,* the intoxicated patron and his wife brought suit together for personal injury compensation, whereas in the instant case the suit alleges loss of consortium and is brought by the surviving family alone. We will address each of these issues in turn.

■ We recognize that appellee engaged in the sale of liquor without a permit. We note, however, that the purpose of R.C. 4303.25 was primarily to raise revenue and to regulate which businesses should hold a permit. The statute thus was not intended to afford potential plaintiffs protection from this type of harm. We find that the fact that appellee does not possess a liquor permit has no bearing on whether its act of selling alcohol to Gillum does or does not constitute negligence. We believe that the holding in *The 10th Inning, supra,* applies to the instant case even though appellee does not possess a liquor permit.

Appellant also argues that under the holding of *The 10th Inning,* an intoxicated patron's cause of action is barred only when the injury sustained by the

intoxicated patron was proximately caused by the patron's own intoxication. Appellant asserts that because the patron's own intoxication may not always be solely responsible for the injury, this leaves open the possibility of more than one proximate cause. Appellant argues that because this possibility exists, the causation issue should be submitted to the jury, which should then determine which actors should bear responsibility and allocate the appropriate portion of fault to each.

In addressing appellant's argument, we acknowledge that under Ohio's comparative negligence system, such an allocation of fault by the jury may seem logical. See *Hicks v. Consol. Rail Corp.* (1993), 92 Ohio App.3d 636, 640, 637 N.E.2d 19, 22. We note, however, that the court in *The 10th Inning* considered this possibility and rejected the idea on the same public policy grounds that decided the outcome of the entire case. The court wrote as follows concerning this idea:

"Some might suggest that this court permit a cause of action by the intoxicated patron and allow the court or jury to determine the comparative negligence of the permit holder and the intoxicated patron. While this alternative seems attractive, we decline such a course * * *." *Id.,* 49 Ohio St.3d at 291, 551 N.E.2d at 1298.

The court went on to cite several public policy arguments supporting the conclusion that no cause of action should be allowed.

Appellant also asserts that her claim, unlike the personal injury action brought in *The 10th Inning,* is for the loss of consortium suffered by the family, a cause of action separate and distinct from her deceased husband's claim for personal injury. Appellant cites *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84, 585 N.E.2d 384, in support of her assertion. Appellant argues that because she has a separate and distinct claim for loss of consortium, she and her family are placed in the position of innocent third parties and should be allowed to recover.

In *The 10th Inning,* the Ohio Supreme Court very clearly stated that with respect to R.C. 4301.22(B), the General Assembly intended to protect only innocent third parties from harm, not intoxicated patrons. We believe that the court's statement that the intoxicated patron is not the type of "innocent party" meant to be protected under R.C. 4301.22(B) applies to the facts in the case *sub judice.* Dean Prosser made the following comments on legislation similar to the statute under discussion:

"It is not every provision of a criminal statute or ordinance which will be adopted by the court, in a civil action for negligence, as the standard of conduct of a reasonable person. Otherwise stated, there are statutes which are considered to create no duty of conduct toward the plaintiff, and to afford no basis for the

creation of such a duty by the court. The courts have been careful not to exceed the purpose which they attribute to the legislature. * * *

" * * *

"In many cases the evident policy of the legislature is to protect only a limited class of individuals. If so, the plaintiff must bring himself within that class in order to maintain an action based on the statute. * * *

"The class of persons to be protected may of course be a broad one, extending to all those likely to be injured by the violation. Thus a statute * * * must clearly be intended for the benefit of any member of the public who may be injured by the act or thing prohibited. * * *

" * * *

"The same limitation of the effect of the statute to accomplish only the supposed policy of the legislature is found in the overlapping requirement that the harm suffered must be of the kind which the statute was intended, in general, to prevent. * * *

" * * *

"If the statute is construed as not covering the plaintiff, or the particular type of harm, many courts have held that its violation is not even evidence of negligence, and can have no effect on liability at all. * * *" (Footnotes omitted.) Prosser & Keeton, Law of Torts (5 Ed.1984) 222, 224–225, 231, Section 36.

 Appellant cites *Bowen, supra,* for the proposition that her claim for loss of consortium is independent of any personal injury claim her deceased husband might have brought, and that therefore she is not bringing a derivative claim but is rather an innocent third party. We agree with appellant that, under the holding in *Bowen,* an action for loss of consortium occasioned by a spouse's injury is a *separate and distinct* cause of action. We note, however, that in *Bowen* the Supreme Court of Ohio also wrote the following concerning the spouse's independent claim for loss of consortium:

"In so holding, we recognize that *a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury.* For instance, in *Schiltz v. Meyer* (1971), 32 Ohio App.2d 221, 61 O.O.2d 247, 289 N.E.2d 587, paragraph one of the syllabus, the court held that where a cause of action for personal injury by one spouse is not a cause of action recognized in Ohio, an action for loss of consortium by the other spouse premised upon the injurious occurrence is, likewise, barred. Our holding today does not affect that determination." (Emphasis added.) 63 Ohio St.3d at 92–93, 585 N.E.2d at 392.

Thus, while a spouse's claim for loss of consortium is separate and distinct, the uninjured spouse cannot recover for loss of consortium if there is no cognizable claim under Ohio law that would be available to the injured spouse. See, also, *Hosom v. Eastland Lanes, Inc.* (1991), 72 Ohio App.3d 599, 595 N.E.2d 534. Because we find that *The 10th Inning* applies to this case, we must also find that there is no claim under Ohio law that would allow appellant's decedent to recover if he were alive. Therefore, appellant has no claim for loss of consortium.

As we noted earlier, the Supreme Court of Ohio stated very clearly in *The 10th Inning* that with respect to R.C. 4301.22(B), the General Assembly intended to protect only innocent third parties from harm, not intoxicated patrons. *Lape v. Rose* (1993), 86 Ohio App.3d 574, 621 N.E.2d 713; *Monateri v. Polito, Zebark, Inc.* (Dec. 18, 1992), Lake App. No. 92–L–088, unreported, 1992 WL 387363; *Murphy v. Greek Ent.* (July 13, 1992), Clermont App. No. CA91–10–079, unreported, 1992 WL 165142; *Evan v. The Clubhouse Lounge* (May 10, 1991), Lake App. No. 90–L–14–059, unreported, 1991 WL 77249. The few minor factual differences between that case and the case *sub judice* are not significant enough to overcome the strong policy considerations that bar a cause of action brought by the intoxicated patron. Appellant's deceased spouse would have had no cause of action based upon a violation of R.C. 4301.22(B) because he fell outside the class of those intended by the General Assembly to be protected by R.C. 4301.22(B). Therefore, we find that appellant, in accordance with *Bowen, supra,* has no cause of action for loss of consortium. The trial court did not err in granting summary judgment in favor of appellee.

Accordingly, based upon the foregoing reasons, we overrule appellant's first, second and third assignments of error.

*Judgment affirmed.*

STEPHENSON and HARSHA, JJ., concur.