WALKER, Admr., Appellant,

v.

CAPRI ENTERPRISES, INC., Appellee, et al.

[Cite as *Walker v. Capri Ent., Inc.* (1997), 125 Ohio App.3d 154.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE05–633.

Decided Dec. 31, 1997.

*Crabbe, Brown, Jones, Potts & Schmidt, James D. Gilbert* and *Donald S. Simon,* for appellant.

*Keener, Doucher, Curley & Patterson* and *W. Charles Curley,* for appellees.

DESHLER, Judge.

This is an appeal by plaintiff, Bruce Walker III, from a summary judgment rendered by the Franklin County Court of Common Pleas in favor of defendants, Capri Enterprises, Inc., and Virginia A. Palermo.

Defendant Capri Enterprises, Inc., operates Capri Lanes, a bowling alley located at 5860 Roche Drive, Columbus. Virginia A. Palermo, at all times relevant to the facts of this case, worked as a bartender at Capri Lanes under the employment of Capri Enterprises, Inc.

Bruce Walker, Jr., died in the early morning hours of January 16, 1994; decedent was a patron at the Capri Lanes at the time of his death. The coroner's report listed the immediate cause of death as "acute ethanol intoxication."

On November 27, 1996, plaintiff, as the administrator of decedent's estate, brought a wrongful death action against defendants. Plaintiff's complaint alleged that defendants had served alcohol to decedent while he was already intoxicated and subsequent to a 2:30 a.m deadline for serving alcohol, in violation of the establishment's liquor permit. It alleged that defendants' actions in serving alcohol to decedent proximately caused his death and set forth causes of action for negligence, reckless, willful, wanton and/or intentional misconduct, *respondeat superior,* and negligent hiring.

On January 22, 1997, defendants filed a motion for summary judgment. In the accompanying memorandum, defendants argued that Ohio case law as well as public policy precluded a claim against a liquor permit holder. Defendants also argued that the claim against defendant Virginia Palermo was barred by the two-year statute of limitations under R.C. 2125.02(D).

On February 10, 1997, plaintiff filed a memorandum in opposition to defendants' motion for summary judgment. Attached to the memorandum was the affidavit of Alfred E. Staubus, Ph.D. Defendants filed a reply memorandum on March 3, 1997.

By entry filed April 10, 1997, the trial court rendered a decision granting defendants' motion for summary judgment. The trial court, in granting summary judgment as to defendant Capri Enterprises, Inc., relied on the Ohio Supreme Court's decision in *Smith v. 10th Inning, Inc.* (1990), 49 Ohio St.3d 289, 551 N.E.2d 1296. The trial court granted summary judgment in favor of Palermo on the basis that the wrongful death claim against Palermo was filed more than two years after decedent's death, and thus fell outside the statute of limitations.

On appeal, plaintiff sets forth the following single assignment of error for review:

"The Franklin County Court of Common Pleas erred in granting summary judgment to defendant Capri Enterprises, Inc. because its decision was based solely upon an unprecedented, overbroad and inaccurate interpretation of the Ohio Supreme Court's decision in *Smith v. The 10th Inning, Inc.* (1990), 49 Ohio St.3d 289 [551 N.E.2d 1296]."

Under his single assignment of error, plaintiff contends that the trial court erred in holding that public-policy considerations preclude recovery by an intoxicated patron or the administrator of the patron's estate in an action against a liquor permit holder. More specifically, plaintiff argues that the trial court erred in its application and reliance on the Ohio Supreme Court's decision in *Smith, supra,* and therefore improperly granted summary judgment in favor of defendant Capri Enterprises, Inc. (hereinafter "defendant").[1]

In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, the Ohio Supreme Court discussed the applicable standard in ruling on a motion for summary judgment, stating:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

In *Smith, supra,* 49 Ohio St.3d 289, 551 N.E.2d 1296, the court held in the syllabus that "[a]n intoxicated patron has no cause of action against a liquor permit holder under R.C. 4301.22(B) where the injury, death or property damage sustained by the intoxicated patron off the premises of the permit holder was

---

1. Plaintiff does not, in his appeal, challenge the trial court's grant of summary judgment in favor of Virginia A. Palermo. As noted under the facts, the trial court concluded that plaintiff's claim against Palermo was barred by the two-year statute of limitations of R.C. 2125.02(D).

proximately caused by the patron's own intoxication." Under the facts of *Smith,* the plaintiff, a patron of the defendant's liquor establishment, left defendant's tavern and was involved in an automobile accident in which he sustained injury. The issue before the Ohio Supreme Court in *Smith* was whether an intoxicated person could bring a cause of action for damages under R.C. 4301.22(B) against the permit holder that sold him or her the intoxicating beverages. R.C. 4301.22(B), which is applicable to permit holders, provides that "[n]o permit holder * * * shall sell * * * intoxicating liquor to an intoxicated person." In the *Smith* decision, the Ohio Supreme Court, citing public policy considerations, held that such a cause of action did not exist.

Plaintiff asserts that the facts of the instant case are distinguishable from *Smith.* First, plaintiff contends that the tortious activity alleged in *Smith* was simply that defendant served plaintiff alcohol after he was already intoxicated, while in the instant case plaintiff's theory of liability is predicated upon the additional claim that defendant served the decedent after the hours of 2:30 a.m., in violation of state law and contrary to the deadline prescribed in defendant's liquor permit. Thus, plaintiff argues, under the facts of *Smith,* the issue of serving alcohol to an intoxicated person necessarily implicated a subjective evaluation by a bartender to determine whether a patron had consumed too much alcohol. Plaintiff contends that the duty of a liquor establishment not to serve alcohol to patrons after the mandatory closing time is distinguishable because it involves no such subjective evaluation.

Plaintiff also contends that *Smith* is distinguishable because the injury sustained by the intoxicated patron in that case occurred off the premises of the permit holder as opposed to the facts of the instant case, where decedent was found dead at defendant's establishment. Furthermore, plaintiff argues, the cause of action in *Smith* involved a claim of negligence *per se,* whereas in the instant case plaintiff seeks recovery for causes of action recognized under common law. We note that, although not cited in plaintiff's initial brief before this court, plaintiff's reply brief states that "[l]iability is based upon R.C. 4399.18, which calls for liability of a permit holder if a person is injured on the permit holder's premises, and the injury was proximately caused by the permit holder or his employer."

Subsequent to the Ohio Supreme Court's holding in *Smith,* a number of appellate courts have reviewed actions brought by patrons or their representatives for injuries received by those patrons after consuming intoxicating liquors at a liquor establishment. Our review of Ohio case law fails to reveal any case subsequent to *Smith* (nor has plaintiff cited such a case) in which a court has determined that a cause of action exists on behalf of an adult intoxicated patron or his or her estate against a permit holder, regardless of whether the theory of

recovery was under common-law negligence or pursuant to a statute such as R.C. 4399.18. Rather, appellate courts have held, similar to the trial court in the instant case, that the holding of the Ohio Supreme Court in *Smith* is based upon broad public policy considerations that extend beyond actions brought under R.C. 4301.22(B).

Thus, in *Fifer v. Buffalo Cafe* (1991), 76 Ohio App.3d 297, 601 N.E.2d 601, the court held that an administrator of the estate of the decedent, who died of acute alcohol intoxication after consuming liquor at defendant's cafe, did not have a common-law negligence claim against defendant based on statutes prohibiting the sale of alcohol to a visibly intoxicated person or to a person who habitually drinks alcohol to excess. The court in *Fifer*, citing *Smith*, reasoned that the statutes relied upon by plaintiff were not enacted to benefit intoxicated persons. In *Fifer*, the court rejected plaintiff's contention that *Smith* precluded a cause of action under R.C. 4301.22 only where the injury occurred off the premises of the liquor permit holder, holding that "[w]e believe that for the public policy reasons stated in *Smith*, the intoxicated patron has no cause of action under R.C. 4301.22, regardless of where the injury occurred." *Fifer, supra*, at 300, 601 N.E.2d at 603.

In *Gillum v. Fairgreens Country Club* (1996), 110 Ohio App.3d 60, 673 N.E.2d 637, plaintiff, the administrator of a decedent's estate, brought a wrongful death action against the defendant country club for loss of consortium, asserting that defendant negligently served alcohol to the decedent while he was visibly intoxicated and that the negligence proximately resulted in a fatal automobile accident. In the complaint, plaintiff alleged that defendant's conduct "was not merely negligent, but 'also demonstrated malice, aggravated and egregious fraud, oppression and insult.'" *Id.* at 62, 673 N.E.2d at 638. The trial court granted summary judgment in favor of defendant, holding that defendant owed no duty to the decedent.

On appeal, plaintiff asserted that she had a common-law negligence action against defendant based upon defendant's alleged violation of R.C. 4301.22(B) and that the action should allow her to recover damages for loss of consortium "even though the loss was at least partially caused by the intoxicated decedent himself." *Id.* at 64–65, 673 N.E.2d at 640. The plaintiff in *Gillum* argued that the facts in *Smith* were distinguishable because, in *Smith*, the establishment held a liquor permit, while the defendant in *Gillum* apparently sold alcohol without a permit. Plaintiff further asserted that a cause of action should lie "if more than one proximate cause, *i.e.*, one apart from the intoxicated patron's own negligence, contributed to the accident." *Id.* at 66, 673 N.E.2d at 641. Thus, plaintiff argued that the issue of distribution of fault should be submitted to the jury based upon Ohio's comparative negligence scheme.

Regarding the claim that defendant engaged in the sale of liquor without a permit, in violation of statute, the court noted that the purpose of R.C. 4303.25 "was primarily to raise revenue and to regulate which businesses should hold a permit." *Id.* Thus, the court concluded that, since the statute was not intended to afford potential plaintiffs protection from this type of harm, the fact that defendant "does not possess a liquor permit has no bearing on whether its act of selling alcohol to Gillum does or does not constitute negligence." *Id.*

The court in *Gillum* next addressed plaintiff's argument that the holding in *Smith* barred an intoxicated patron's cause of action only when the injury was proximately caused by the patron's own intoxication. The court rejected this argument, holding:

"Appellant asserts that because the patron's own intoxication may not always be solely responsible for the injury, this leaves open the possibility of more than one proximate cause. Appellant argues that because this possibility exists, the causation issue should be submitted to the jury, which should then determine which actors should bear responsibility and allocate the appropriate portion of fault to each.

"In addressing appellant's argument, we acknowledge that under Ohio's comparative negligence system, such an allocation of fault by the jury may seem logical. See *Hicks v. Consol. Rail Corp.* (1993), 92 Ohio App.3d 636, 640, 637 N.E.2d 19, 22. We note, however, that the court in *The 10th Inning* considered this possibility and rejected the idea on the same public policy grounds that decided the outcome of the entire case. The court wrote as follows concerning this idea:

" 'Some might suggest that this court permit a cause of action by the intoxicated patron and allow the court or jury to determine the comparative negligence of the permit holder and the intoxicated patron. While this alternative seems attractive, we decline such a course * * *.' *Id.,* 49 Ohio St.3d at 291, 551 N.E.2d at 1298." *Gillum, supra,* 110 Ohio App.3d at 67, 673 N.E.2d at 641–642.

*Monateri v. Polito, Zebark, Inc.* (Dec. 18, 1992), Lake App. No. 92–L–088, unreported, 1992 WL 387363, involved a case in which the plaintiff, a paraplegic, had patronized defendant's bar for approximately four and one half hours; she was later discovered slumped in her wheelchair, unconscious, in the parking lot of the bar. In that case, the court discussed the relationship between R.C. 4399.18 and 4301.22(B) in light of the Ohio Supreme Court's decision in *Smith.* The court noted that R.C. 4399.18 represented a codification of preexisting public policy, *Gressman v. McClain* (1988), 40 Ohio St.3d 359, 362, 533 N.E.2d 732, 735–736, and the court concluded that "whether a particular case was decided pursuant to R.C. 4399.18 or 4301.22(B) is of little consequence." *Monateri, supra.* The *Monateri* court thus concluded that although the cause of action in *Smith* arose

prior to the enactment of R.C. 4399.18, and the injury in that case occurred off the permit holder's premises, "there is a strong public policy against allowing a patron to recover for harm caused to himself or herself due to his or her own overindulgence whether on or off the premises, absent a situation governed by R.C. 4399.01." *Monateri, supra.*

Accordingly, the holdings in these cases indicate that appellate courts have not limited the holding in *Smith* solely to actions brought asserting negligence *per se* under R.C. 4301.22(B). Further, these cases have declined to distinguish the holding in *Smith* to allow a recovery where the injury occurred on the premises as opposed to off the premises.

As noted above, plaintiff contends that the instant case is distinguishable from other Ohio cases because it involves a violation of a statute prohibiting the sale of liquor after hours. Regarding the issue of when a statutory violation may give rise to a civil action, one commentator has noted the following:

"It is not every provision of a criminal statute or ordinance which will be adopted by the court, in a civil action for negligence, as the standard of conduct of a reasonable person. Otherwise stated, there are statutes which are considered to create no duty of conduct toward the plaintiff, and to afford no basis for the creation of such a duty by the court. The courts in such cases have been careful not to exceed the purpose which they attribute to the legislature. * * *

" * * *

"In many cases the evident policy of the legislature is to protect only a limited class of individuals. If so, the plaintiff must bring himself within that class in order to maintain an action based on the statute. * * *

"The purpose of the legislation is of course a matter of interpretation of its terms, in the light of the evil to be remedied. * * *

"The same limitation of the effect of the statute to accomplish only the supposed policy of the legislature is found in the overlapping requirement that the harm suffered must be of the kind which the statute was intended, in general, to prevent." Prosser & Keeton on Torts (5 Ed.1984) 222, 224–225, Section 36.

At issue in the instant case is the purpose of Ohio's statutory provisions prohibiting the sale of intoxicating liquors after certain hours. This issue was addressed by the court in *Lajoie v. Maumee River Yacht Club* (Feb. 2, 1990), Lucas App. No. L–89–014, unreported, 1990 WL 7976, in which a plaintiff alleged that the defendant establishment was negligent in serving alcoholic beverages beyond authorized hours. Under the facts of that case, the plaintiff's husband, after consuming alcohol at a yacht club in the early morning hours, lost his balance while walking along a dock, fell in the water, and drowned. Plaintiff alleged that the defendant had been negligent in serving alcoholic beverages

either beyond the time authorized under its liquor permit or after 2:30 a.m. on a Sunday, in violation of R.C. 4301.22(D).

The court in *Lajoie,* relying in part on provisions of the treatise cited above, rejected plaintiff's argument, holding:

"It is well-settled law in Ohio that for violation of a statute to constitute negligence per se the injured person must be a part of the class the statute was designed to protect. See *Marsh v. Koons* (1908), 78 Ohio St. 68, 84 N.E. 599, paragraph one of the syllabus. It is also clear that prohibiting liquor sales after a certain hour or limiting sales on Sunday are 'intended only to protect such interests * * * as public peace, morality and quiet, rather than the safety of any particular class of individuals.' Keeton, Prosser and Keeton on Torts (5th Ed.1984), 222–223, Section 36."

█ We agree with the court in *Lajoie* that a statute prohibiting the sale of liquor after a certain hour is intended to protect the public at large rather than afford protection to a particular class of individuals, *i.e.,* intoxicated patrons. Thus, we find unpersuasive plaintiff's argument that a violation of the statute at issue would give rise to a cause of action on behalf of an intoxicated person or his estate.

As previously noted, in his reply brief, plaintiff cites R.C. 4399.18, a statute that contemplates possible liability for injury occurring on a permit holder's premises. Specifically, R.C. 4399.18 states in part:

"Notwithstanding division (A) of section 2307.60 of the Revised Code and except as otherwise provided in this section and in section 4399.01 of the Revised Code, a person, and the executor or administrator of the estate of a person, who suffers injury, death, or loss to person or property as a result of the actions or omissions of an intoxicated person do not have a cause of action against a liquor permit holder or an employee of a liquor permit holder who sold beer or intoxicating liquor to the intoxicated person unless the injury, death, or loss to person or property occurred on the liquor permit holder's premises or in a parking lot under the control of the liquor permit holder and was proximately caused by the negligence of the liquor permit holder or an employee of the liquor permit holder."

We note that at least two appellate courts have construed the language of R.C. 4399.18 to prohibit a cause of action by an intoxicated patron. See *Fifer, supra,* 76 Ohio App.3d at 299, 601 N.E.2d at 602 ("R.C. 4399.18 only provides a cause of action to third parties for injuries caused by an intoxicated patron"); *Gillum, supra,* 110 Ohio App.3d at 64, 673 N.E.2d at 639–640 (R.C. 4399.18 inapplicable to action by intoxicated patron because the statute's language limits recovery to innocent third parties who are injured by dram shop's negligent sale of liquor).

Although we do not construe the language of R.C. 4399.18 as narrowly as those courts, we nevertheless conclude that the trial court in the instant case properly granted summary judgment in favor of defendants based upon the court's interpretation of *Smith.*

As noted by the court in *Gillum,* while it is possible that "the patron's own intoxication may not always be solely responsible for the injury," leaving open the possibility of "more than one proximate cause," the Ohio Supreme Court in *Smith* considered this issue in light of Ohio's comparative negligence system and "rejected the idea on the same public policy grounds that decided the outcome of the entire case." *Gillum, supra,* 110 Ohio App.3d at 67, 673 N.E.2d at 641. Specifically, the court in *Smith* held as follows:

"Some might suggest that this court permit a cause of action by the intoxicated patron and allow the court or jury to determine the comparative negligence of the permit holder and the intoxicated patron. While this alternative seems attractive, we decline such a course for several reasons. Basically, comparing the negligence of the parties in this context presents a classic 'chicken or egg' question: Is the permit holder who admittedly has experience in knowing the predilections and capacities of his or her customers more negligent or blameworthy than the intoxicated patron who is clever enough to mask his or her own intoxication in order to be served another drink[?] In any event, we find that one of the strongest reasons compelling rejection of such a cause of action by the intoxicated patron against the permit holder is one grounded firmly in common-sense public policy; namely, that an adult who is permitted to drink alcohol must be the one who is primarily responsible for his or her own behavior and resulting voluntary actions. Clearly, permitting the intoxicated patron a cause of action in this context would simply send the wrong message to all our citizens, because such a message would essentially state that a patron who has purchased alcoholic beverages from a permit holder may drink such alcohol with unbridled, unfettered impunity and with full knowledge that the permit holder will be ultimately responsible for any harm caused by the patron's intoxication. In our opinion, such a message should never be countenanced by this court." *Id.,* 49 Ohio St.3d at 291–292, 551 N.E.2d at 1298.

As previously discussed, plaintiff has failed to cite any authority subsequent to *Smith* in which an adult intoxicated patron has recovered from a permit holder for injuries sustained for injuries resulting from the patron's own intoxication. Rather, courts have consistently held, based upon the policy considerations expressed in *Smith,* that a cause of action does not exist under such circumstances even though the theories of recovery have differed from the *Smith* case. In the present case, we agree with the trial court's determination that the holding in *Smith* was based upon broad public-policy considerations that are not limited

solely to actions brought pursuant to R.C. 4301.22(B). Further, under the facts of the instant case, we find that the trial court properly concluded, based upon the holding in *Smith,* that Ohio law and public policy do not provide a cause of action against a permit holder by an intoxicated patron or his estate for injuries sustained by the patron as a result of consuming alcohol. Thus, the trial court did not err in granting defendant's motion for summary judgment. While the rationale of *Smith* compels our decision to affirm the trial court, we urge the Supreme Court to revisit this matter, as the alleged facts of this case suggest that under at least some circumstances, liquor permit holders should assume some responsibility for their conduct.

Based upon the foregoing, plaintiff's single assignment of error is overruled, and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

PEGGY BRYANT, J., concurs.

TYACK, P.J., dissents.

TYACK, Presiding Judge, dissenting.

I respectfully dissent.

The facts before us indicate that Bruce Walker, Jr., was an alcoholic. He was known to be an alcoholic by employees of Capri Enterprises, Inc., especially Virginia Palermo. On the night Walker died, Palermo apparently gave him a bottle of Wild Turkey and allowed him to finish drinking himself to death. Her only precaution was to take his car keys away from him, so he would not attempt to drive in his drunken state.

Walker drank until he passed out. Nobody apparently took much notice, leading me to believe that employees of Capri Enterprises, Inc., had seen Walker consume incredible amounts of alcohol before. He passed out long after the bar and bowling alley were supposed to have closed. He passed out long after the employees had to have known he was intoxicated. He passed out when only a handful of people were still present. Therefore, we are not addressing a situation where liability should be considered for a liquor license holder who had some excuse for not knowing that it was endangering a patron.

The autopsy performed upon Bruce Walker, Jr., indicated that at the time he died, he had a blood-alcohol level of .39 grams percent. Given Walker's weight of two hundred fifty-two pounds, I conclude that he probably had consumed in excess of thirty drinks during the hours before his death. If the testimony of

family members who saw him at 1:45 a.m. is to be believed, many of those drinks had to have been consumed after the bar was supposedly closed.

This case does not present a situation where a person who drank too much is attempting to reap some sort of financial reward. The person who drank too much is dead. Instead, this case involves the question of whether or not the heirs of Bruce Walker, Jr., have some financial claim against the bar which recklessly provided him the means to kill himself.

I personally believe that *Smith v. 10th Inning, Inc.* (1990), 49 Ohio St.3d 289, 551 N.E.2d 1296, was incorrectly decided. However, even if correctly decided, the *Smith* case should not be extended to provide protection in situations such as the one presented here.

Human nature being what it is, there will always be some bar owners who are more concerned about making a profit than about looking out for the welfare of patrons—not to mention the welfare of innocent motorists or family members of alcoholics. There is much more profit to be made from serving an alcoholic dozens of drinks than there is to be made from honoring the letter and spirit of the law about when to stop serving alcohol. Some of this profit should go to the heirs of the Bruce Walker, Jrs. of Ohio and to increased premium rates for the insurance companies of Ohio once the fact is known that part of the financial risk from misconduct such as is presented here must be borne by those permit holders who flagrantly ignore their legal responsibilities.

Needless to say, I would not affirm the summary judgment rendered by the trial court. Since a majority of this court does, I respectfully dissent.