JOURNAL ENTRY AND OPINION
This is an appeal by John S. Simpson from his conviction on one count of obstructing official business, a second degree misdemeanor, in violation of Lakewood Codified Ordinance (L.C.O.) 525.07, following a bench trial before Visiting Lakewood Municipal Judge William C. Todia. He complains that his conviction was based on insufficient evidence. We reverse.
From the record we glean the following: At approximately 12:30 a.m. on June 6, 2001, Simpson claimed he inadvertently dialed 911" and quickly hung up his phone. A City of Lakewood police dispatcher called his number back, and he told her that he had mistakenly dialed 911 and that the police were not needed. The dispatcher informed him that the police were already en route to his apartment, and he restated that the police were not needed and hung up. Although the dispatcher repeatedly attempted to call him a second time, he did not answer his phone thereafter.
She discovered that there was a caution file for Simpson's address, noting that the individual living there named John Simpson may have had emotional problems and owned a gun.[1] Patrolmen Tony Sidell and Truman McGonagle responded to Simpson's Clarence Avenue apartment complex. Visitors to Simpson's building need to be buzzed in from a common vestibule, and the officers tried several times to reach Simpson through his doorbell, but he did not respond. Sergeant Ward, a supervisor on duty, joined the officers; they were able to reach a tenant who buzzed them in, and they proceeded to Simpson's apartment. They knocked on his door and identified themselves, and he answered through the door that everything was fine and they were not needed. The officers persisted in knocking and advised several times that they needed to enter to verify that no one in the apartment needed assistance. Simpson then partially opened his door, the apartment was dark and the officers could see only his head and one arm.
Simpson refused them entry, refused to identify himself and kept replying that we are fine, and leave my family alone. When he attempted to shut his door, Sergeant Ward prevented it and the officers entered, and Simpson was immediately handcuffed and seated. A quick search of the apartment confirmed that Simpson had, in fact, been alone, and that no emergency existed requiring police intervention. Sargent Ward issued him a citation for obstruction of official business and the officers left.
At trial, the City presented only the testimony of Patrolman Sidell. The gist of Simpson's pro se defense was that the officers had no right to enter his home and, throughout his testimony, frequently referred to himself as we, ourselves, my family, and spoke of our apartment, where he lives alone.
In his closing, one sentence argument, the prosecutor urged a finding of guilty because Simpson did obstruct official business * * * by not cooperating with the police and obstructing the entrance to the building where (sic) during an investigation by the police. The judge found Simpson guilty and, at a later hearing, Judge Patrick Carroll sentenced him to ninety days in jail and a $750 fine, with the jail time and $600 of the fine suspended. He also ordered that Simpson be placed on probation for two years, and that he submit to a psychiatric exam and abide by all treatment recommendations following that evaluation. Simpson asserts one assignment of error:
 The Evidence Provided at Trial Was Insufficient For Any Rational Trier of Fact to Conclude Beyond a Reasonable Doubt That Defendant/appellant Had Obstructed Official Business. Therefore, The Guilty Verdict Against Defendant/appellant Was Violative of His Due Process Rights Under The Fourteenth Amendment Of The United States Constitution.
Simpson contends that there is insufficient evidence to convict him because his statements to police indicating that the 911 call was a mistake confirmed that there was no emergency to investigate. He claims that making an inadvertent 911 call is not an illegal act requiring police action, and he questions the authority of the police to enter his apartment without a warrant or his permission, claiming a privilege to refuse them entry.
With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the * * * verdict as a matter of law. * * * In essence, sufficiency is a test of adequacy.[2]
Whether the evidence is legally sufficient to sustain a verdict is a question of law,[3] and the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[4] In general, the Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution coextensively prohibit unreasonable and warrantless searches and seizures.[5] The United States Supreme Court, in Payton v. New York,[6] held, "as a basic principle of Fourth Amendment law, that searches and seizures inside a home without a warrant are presumptively unreasonable." The Supreme Court also stated that, "before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries."[7]" Exigent circumstances," something of a term of art, denotes the existence of "`real immediate and serious consequences'" that would certainly occur were a police officer to "`postpone action to get a warrant.'"[8] The phrase has been understood by the United States Supreme Court to comprise, generally, two separate sets of circumstances: 1) "the imminent destruction of vital evidence,"[9] and 2) the "`need to protect or preserve life or avoid serious injury.'"[10]
The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others.[11] The exigent circumstances exception to the warrant requirement applies when the police have a reasonable basis to believe someone inside the premises requires immediate aid.[12] When the officers in question have reasonable grounds upon which to believe that an emergency exists, they have a duty to enter the premises and investigate, provided that the warrantless search is "strictly circumscribed by the exigencies which justify its initiation."[13]
Reasonable belief is assessed from the facts and circumstances known to the officers, and from their point of view.[14] L.C.O. 525.07(a) defines the offense of obstructing official business as follows:
 No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties. R.C. 2921.31 prohibits obstructing official business in identical language. Under the facts of this case, the exigent circumstances authorized the officers to make a warrantless entry into Simpson's home and that removed his Fourth Amendment privilege to resist entry.[15] The question next posed requires the identification of the act Simpson performed which purportedly hampered or impeded the officers' authorized conduct. His refusal to respond to the building entrance buzzer, open his door at the officers' request, or consent to their entry are not affirmative acts, but omissions, and L.C.O. 525.07 does not, and cannot, prohibit a failure to act.[16] It appears Simpson's only active conduct was to attempt to close his door, but there was no evidence that the officers, when they subsequently pushed through, were more than momentarily hindered or impeded by the attempt. Clearly L.C.O 525.07 does not criminalize a minor delay, annoyance, irritation or inconvenience.[17]
Patrolman Sidell was never asked what act Simpson performed that hindered or hampered the performance of his duty or exactly how he was hindered or hampered; the prosecutor's only comment on the evidence involved Simpson obstructing the officers' entrance to the building. When asked if Simpson was being uncooperative or obstructive, after opening his door and telling the officers to go away, the officer testified No. He was not being cooperative at all.
This is not to suggest that every act which can conceivably be said to hinder a police officer rises to the level of criminal conduct. Certainly there is a level of hindrance which is simply too casual, remote or indirect to be punishable under the statute. Although entitled to full respect of the badge and uniform in the execution of his or her duty, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obligated to be either blindly or silently obeisant to law enforcement.[18] L.C.O. 525.07(a) excludes Simpson's omissions and conduct prior to closing his door from consideration by the finder of fact, yet that is exactly what both the testimony and the prosecutor's closing argument claimed as the basis for the charge. The City failed to prove the elements of L.C.O. 525.07 and Simpson's assignment of error has merit.
Judgment reversed and acquittal entered.
It is, therefore, considered that said appellant recover of said appellee the costs herein.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to the Lakewood Municipal Court to carry this judgment into execution. A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., CONCURS JAMES D. SWEENEY, P.J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION
[1] A 1997 Lakewood police report in the record describes an incident similar to the facts of this case, where Simpson inadvertently dialed 911 and hung up, and subsequently was unusually defensive and acting strange toward the officers responding to verify that no emergency existed. It also notes that the responding officers eventually visually verified that he was alone in the apartment, and that he possessed a gun he claimed to carry as part of his duties as a private security guard.
[2] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541 (Internal cites omitted.).
[3] State v. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148.
[4] See State v. Thompkins, supra; State v. Jenks (1991)61 Ohio St.3d 259, 574 N.E.2d 492.
[5] See State v. Robinette (1997), 80 Ohio St.3d 234, 239,685 N.E.2d 782.
[6] (1980), 445 U.S. 573, 586, 63 L.Ed.2d 639, 100 S.Ct. 1371.
[7] Welsh v. Wisconsin (1984), 466 U.S. 740, 753, 80 L.Ed.2d 732,745, 104 S.Ct. 2091; Payton, supra.
[8] Welsh v. Wisconsin (1984), 466 U.S. 740, 751, 80 L.Ed.2d 732,104 S.Ct. 2091, quoting McDonald v. United States (1948), 335 U.S. 451,459-60, 93 L.Ed. 153, 69 S.Ct. 191 (Jackson, J., concurring).
[9] Wong Sun v. United States (1963), 371 U.S. 471, 484,9 L.Ed.2d 441, 83 S.Ct. 407.
[10] Mincey v. Arizona (1978), 437 U.S. 385, 392, 57 L.Ed.2d 290,98 S.Ct. 2408.
[11] Warden, Maryland Penitentiary v. Hayden (1967), 387 U.S. 294,299, 87 S.Ct. 1642, 18 L.Ed.2d 782.
[12] Parma v. Jackson (1989), 58 Ohio App.3d 17, 18, 568 N.E.2d 702.
[13] State v. Applegate (1994), 68 Ohio St.3d 348, 350, 626 N.E.2d 942, quoting Terry v. Ohio (1968), 392 U.S. 1, 26, 20 L.Ed.2d 889,88 S.Ct. 1868.
[14] State v. Robinson (1995), 103 Ohio App.3d 490, 496,659 N.E.2d 1292.
[15] State v. Pembaur (Feb. 18, 1981), Hamilton App. No. C-790380.
[16] Columbus v. Michel (1978), 55 Ohio App.2d 46, Garfield Hts. v. Simpson (1992), 82 Ohio App.3d 286, Parma v. Campbell (Nov. 1, 2001), Cuyahoga App. No. 79041.
[17] State v. Stayton (1998), 125 Ohio App.3d 158, State v. Stamp(Aug. 14, 1985), Wayne App. No. 2060, State v. Altomare (Nov. 30, 2000), Columbiana App. No. 99-CO-15
[18] Stayton, supra, 126 Ohio App.3d at 164.